**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


JERMAINE PALMER,           )
                                        )     Civil Action No. 16 – 567
               Plaintiff,    )
                                        )
               v.           )     Magistrate Judge Lisa Pupo Lenihan
                                        )
DISTRICT ATTORNEY'S OFFICE     )
OF ALLEGHENY COUNTY,        )     ECF No. 43
                                        )
            Defendant.   )


**MEMORANDUM OPINION**

      This is a *pro se* civil rights action filed under 42 U.S.C. § 1983 by Jermaine Palmer ("Plaintiff") claiming that his rights to due process and access to the court have been violated and seeking, among other things, an injunction granting him access to physical evidence in his state court criminal case, which Plaintiff claims may exonerate him of his conviction if the evidence is subjected to DNA testing. Plaintiff names as Defendant the District Attorney's Office of Allegheny County, which has denied his request for the evidence. Now pending before the Court is a Motion to Dismiss Plaintiff's Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (ECF No. 43), to which Plaintiff has responded in opposition (ECF Nos. 50, 51). The parties subsequently filed numerous replies and responses thereto. (ECF Nos. 52, 54, 58, 60, 61.) For the reasons that follow the Motion will be granted.

**I.    Standard of Review**

      The United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); *see also* Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir. 2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

Also, when considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## II.    Allegations and Relevant Facts of Public Record

Plaintiff's Amended Complaint (ECF No. 33) alleges the following facts.  On June 18, 1993, the body of Marcia Williams ("Ms. Williams" and "victim") was found in a wooded area in Allegheny County ("Allegheny County Murder").  Id., ¶ 18.  On June 1, 1994, Plaintiff was convicted in a non-jury trial of third degree murder in the death of Ms. Williams ("Allegheny County Conviction") and sentenced on July 25, 1994 to ten (10) to twenty (20) years of imprisonment.[1]  Id., ¶ 36.

---

[1] Plaintiff's criminal case is docketed at CP-02-CR-0009376-1993 in the Court of Common Pleas of Allegheny County.  The docket sheet for this case is a matter of public record and can be found online at http://ujsportal.pacourts.us/.  Review of the docket reveals the following relevant procedural history.

The Pennsylvania Superior Court affirmed Plaintiff's judgment of sentence on May 1, 1996, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on October 7, 1996.  On or about July 30, 1997, Plaintiff filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA").  The trial court dismissed the petition on July 20, 1998 and Plaintiff did not appeal.

Plaintiff filed a second PCRA petition on November 3, 2000, seeking a reinstatement of the right to appeal the denial of his first PCRA petition.  On January 25, 2002, the PCRA court granted this petition and reinstated Plaintiff's appellate rights as to his first PCRA petition.  The Superior Court then affirmed the dismissal of Plaintiff's first PCRA petition on January 15, 2003.  The Pennsylvania Supreme Court denied his petition for allowance of appeal on May 29, 2003.

Plaintiff filed his first motion for postconviction DNA testing on January 20, 2005, which the PCRA court denied on April 22, 2005.  The Superior Court affirmed denial of the motion on May 18, 2006.  He did not file a petition for allowance of appeal.

Plaintiff filed another PCRA petition approximately on June 1, 2006, which the PCRA court dismissed as time-barred on June 28, 2006, and the Superior Court affirmed dismissal on April 12, 2007.  The Supreme Court denied a petition for allowance of appeal on August 7, 2007.

Plaintiff filed another PCRA petition, which the PCRA court dismissed as time-barred on January 14, 2008, but the Superior Court reversed and remanded for a full hearing on November 5, 2008.  Following the hearing, which occurred on May 24, 2010, the PCRA court dismissed the petition on July 7, 2010.  The Superior Court affirmed dismissal on March 21, 2011.

The prosecution's key witness was Benjamin Williams, who had led investigators to where Ms. Williams' body was buried and had testified that Plaintiff told him he had strangled Ms. Williams and then forced him at gunpoint to help bury Ms. Williams' body.[2] Id., ¶ 37. Police investigators also collected various pieces of physical evidence based on Benjamin Williams' statements, including hair samples from Plaintiff, clothing and fingernail clippings from the victim, an earring, the quilt used to wrap the victim's body, and a carpet sample from Plaintiff's vehicle from which hair samples were collected. Id., ¶ 23. The evidence was submitted to Criminalist Dorothy J. Menges of the Allegheny County Department of Laboratories Forensic Science Section ("Crime Lab") for microscopic hair analysis and serology testing. Id. The Crime Lab Report indicated that none of the genetic material collected from the evidence matched the specimens provided by Plaintiff.[3] Id., ¶ 24. Plaintiff did not introduce the test results at his trial, nor did he list Menges as a potential witness because the prosecutor stated that he did not intend to call her as a witness. Id., ¶¶ 25-26.

The technology for advanced DNA testing was not available at the time of Plaintiff's trial. Id., ¶ 85. Plaintiff filed his first motion for DNA testing pursuant to Pennsylvania's postconviction DNA testing statute, 42 Pa. C.S.A. § 9543.1[4] on January 20, 2005. Id., ¶ 4.

---

Plaintiff filed his second motion for postconviction DNA testing on June 13, 2013. The PCRA court denied the motion on September 13, 2013. The Superior Court dismissed the appeal on September 22, 2014.

[2] There is no relation between Benjamin Williams and the victim.

[3] Plaintiff believes that the victim's fingernail clippings and clothing were submitted but not examined by Menges. Id.

[4] Under Section 9543.1, an individual convicted of a crime in Pennsylvania, who is serving a term of imprisonment or awaiting execution because of a sentence of death, may file a motion with the sentencing court to have forensic DNA testing conducted on specific evidence that is

Plaintiff sought DNA testing of the victim's clothing, the quilt in which she was wrapped, the carpet from his vehicle, and the items found in the vehicle at the time of his arrest, and he alleged that the absence of his DNA on these items would make a *prima facie* case that demonstrated his innocence. Id., ¶ 84. The PCRA court denied the petition on April 22, 2005, finding no "reasonable probability" that DNA testing would produce exculpatory evidence. The court's order was affirmed on appeal by the Superior Court on May 18, 2006, with the court finding that the absence of Plaintiff's DNA on the items would not demonstrate a *prima facie* case of innocence as required by Pennsylvania's postconviction DNA testing statute, 42 Pa.C.S. § 9543.1(d)(2)(i). (ECF No. 33-1.)

Plaintiff filed a second motion for DNA testing on June 13, 2013, requesting DNA testing for the victim's fingernail clippings, earrings, clothing, hair follicles recovered from the vehicle, and any and all linen recovered from the Sleepy Hollow motel. *See* Com. v. Palmer, No. 1640 WDA 2013, 2014 WL 10677160 (Pa. Super. Ct. Sept. 22, 2014). On September 13, 2013, the PCRA court denied the motion concluding that there was no reasonable possibility that DNA testing could prove his actual innocence and that exceptional circumstances did not warrant the Commonwealth's disclosure of the registration records for the Sleepy Hollow motel. (ECF No. 33-3.) On September 22, 2014, the Superior Court dismissed the appeal because Plaintiff had already completed his twenty year sentence for third degree murder and therefore did not meet the PCRA's eligibility requirements for DNA testing. (ECF No. 33-4.)

Plaintiff also made two separate requests to the Allegheny County District Attorney's Office for access to the evidence in order to conduct DNA testing, once on December 10, 2004,

---

related to the investigation or prosecution of that individual which resulted in his or her conviction. 42 Pa. C.S.A. § 9543.1(a).

and once on November 8, 2005.  ([ECF No. 33-25](#).)  It is unknown when his first request was denied, but his second request was denied on November 16, 2005.  Id.

Plaintiff initiated this action by the filing a Motion for Leave to Proceed *in forma pauperis* that is dated April 29, 2016.[5]  ([ECF No. 1](#).)  After his request to proceed *in forma pauperis* was granted, ([ECF No. 2](#)), and Plaintiff paid his initial partial filing fee, ([ECF No. 5](#)), his Complaint was docket on May 24, 2016, ([ECF No. 7](#)).  He subsequently filed an Amended Complaint on August 23, 2016.  ([ECF No. 33](#).)

### III.   Discussion

#### A.  Access to Evidence for DNA Testing

Plaintiff states that he is seeking access to "all of the evidence listed in the Crime Lab Report, as well as the photographs taken of the motel room and the crime scene where Ms. Williams's body was discovered."  ([ECF No. 33](#), ¶ 56.)  He also seeks "physical evidence obtained from motel room #24 of the Sleepy Hollow motel and the results of any prior forensic testing of the evidence not mentioned in the Crime Lab Report."  Id.  As to Plaintiff's claims against Defendant stemming from the denial of access to this evidence for DNA testing, Defendant maintains that this Court lacks subject matter jurisdiction to consider the claims, and, to the extent that it does not, Plaintiff's claims are time-barred, and, in the alternative, fail to state a claim upon which relief may be granted.  Each of these arguments will be addressed herein.

---

[5] Plaintiff claims that the filing date for this action is February 8, 2016.  Plaintiff is incorrect. While Plaintiff dated his Complaint February 8, 2016, the *earliest* it was mailed to the Court was April 29, 2016, the date on his Motion for Leave to Proceed *in forma pauperis*, and the date his Inmate Account Statement was printed at his institution.  These documents arrived in the same package; therefore, Plaintiff could not have mailed his Complaint before April 29, 2016, and he cannot make a credible allegation that the institution withheld his mail.

# 1. Subject Matter Jurisdiction

First, Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's claims pursuant to the Rooker-Feldman doctrine. [6] The Rooker-Feldman doctrine provides that federal district courts lack subject matter jurisdiction to sit in direct review of state court decisions. *See* Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). It precludes a federal action if the relief requested in the federal action effectively would reverse the state decision or void its ruling. FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996). "[T]here are four requirements that must be met for the Rooker-Feldman doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining and Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original) (quoting Exxon Mobil Corp., 544 U.S. at 284).

In response to Defendant's argument Plaintiff cites to the United States Supreme Court's decision in Skinner v. Switzer, 131 S. Ct. 1289 (2011). In Skinner, a state prisoner filed a federal civil rights action under § 1983, naming the district attorney as the defendant and alleging that the defendant had custody of untested biological evidence Skinner wanted to have tested for DNA purposes. The district court dismissed the complaint for failure to state a claim and reasoned that Skinner needed to pursue any postconviction requests for DNA evidence in a habeas corpus action. 2010 WL 273143 (N.D. Tex. Jan. 20, 2010). The United States Court of

---

[6] This doctrine is predicated on the principles of comity and federalism and originated from two Supreme Court opinions, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

Appeals for the Fifth Circuit affirmed. 363 F. App'x 302 (5th Cir. 2010). Reversing, the Supreme Court concluded that Skinner's complaint stated a cognizable claim for relief and that he could proceed in a § 1983 action against the defendant where he challenged the constitutionality of a state statute on its face. 131 S. Ct. at 1298. In so ruling, the Court specifically addressed the applicability of the Rooker-Feldman doctrine and reiterated that "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." Id. Skinner did not challenge the adverse decisions themselves; instead, he targeted as unconstitutional the Texas statute they authoritatively construed. Id. Thus, the Supreme Court held that Rooker-Feldman did not remove subject-matter jurisdiction over Skinner's federal suit. Id.

Plaintiff argues that, like Skinner, he is not challenging the adverse decisions by the Pennsylvania state courts, but rather Pennsylvania's postconviction DNA testing statute "as applied" to him. (ECF No. 33, ¶¶ 84-93.) The problem with Plaintiff's argument, however, is that he does not explain how, in denying his motions filed under the statute, the state courts *erroneously applied* and *interpreted* Pennsylvania's procedures. His "as applied" procedural due process claim is nothing more than an attack on the state court's correct application of Pennsylvania's postconviction DNA testing statute to the facts of his case, and notably, he does not make a comprehensible independent challenge to the constitutionality of that statute or its procedures for access to DNA testing. Thus, his claim is unlike the claim presented in Skinner, where the Supreme Court held that the existence of a state court judgment interpreting or relying upon a statute does not bar a federal court from entertaining an independent challenge to the constitutionality of that statute. 131 S. Ct. at 1298. Therefore, with the exception of one possible challenge that the Court has liberally construed from his complaint, and which will be

discussed *infra*, the <u>Rooker-Feldman</u> doctrine bars his attack on the state court's judgment denying him access to DNA testing.[7]  Nevertheless, to the extent that this Court does have subject matter jurisdiction, Plaintiff's claims are discussed in more detail below.

## 2. <u>Limitations Period for Actions under 42 U.S.C. § 1983</u>

Defendant argues that Plaintiff's claims are barred by the statute of limitations.  In this regard, Plaintiff seeks recovery against Defendant under 42 U.S.C. § 1983.  The limitations period for civil actions brought under 42 U.S.C. § 1983 is determined by state law.  Under Pennsylvania law, the applicable statute of limitations period for civil rights actions asserted under 42 U.S.C. § 1983 is two years.  *See* 42 Pa. C.S. § 5524.  The date when a civil rights action accrues (begins to run), however, is a matter of federal law.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  A claim accrues when the plaintiff becomes aware, or should have become aware, of both the fact and injury and its causal connection to the defendant.  *See* Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the statute of limitations period); Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1127 (3d Cir. 1988) (a federal cause of action accrues when the plaintiff is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong).

Here, Plaintiff is asserting that his civil rights were violated by Pennsylvania's postconviction procedures in denying his PCRA petition for DNA testing.  Almost every court that has considered this issue has ruled that the statute of limitations on section 1983 claims based on the denial of right to access modern DNA testing begins to run at the end of the state

---

[7] Dismissal on the basis of <u>Rooker-Feldman</u> is recognized as a situation where amendment of the plaintiff's complaint would be futile.  *See* Reisinger v. Luzerne County, 712 F.Supp.2d 332, 352 (M.D. Pa. 2010) (citing Watkins v. Proulx, 235 F. App'x 678, 679 (9th Cir. 2007)).

litigation in which an inmate unsuccessfully sought access to such testing. *See*, *e.g.*, Van Povck v. McCollurn, 646 F.3d 865 (11th Cir. 2011) (holding that statute of limitations on section 1983 claim based on denial of right to access modern DNA testing did not begin when such DNA testing became widely available but only at the end of state litigation in which inmate unsuccessfully sought access to such testing); Savory v. Lyons, 469 F.3d 667 (7th Cir. 2006) (holding that state prisoner's § 1983 claim seeking post-conviction access to physical evidence for the purpose of DNA testing accrued, for limitations purposes, on the date that the state court denied his request for DNA testing under state law; on that date, prisoner became aware of his alleged injury); Mixon v. Sedita, 757 F.Supp.2d 229 (W.D.N.Y. 2010); Moore v. Lockyer, Civ. No. 04-1952, 2005 WL 2334350, at *5-6 (N.D. Cal. Sept. 23, 2005). Some courts, however, have found that the statute of limitations for such claims starts when the plaintiff receives a letter from the District Attorney's Office denying his request to access evidence for DNA testing. *See* Wade v. Brady, 612 F.Supp.2d 90 (D. Mass. 2009); Derrickson v. Del. County Dist. Attorney's Office, No. 04-1569, 2006 WL 2135854, at *7 (E.D. Pa. July 26, 2006) (holding that the plaintiff' due process claim for denial of access accrued "when he received the letter denying him access to the clothing evidence.") Under either scenario, Plaintiff's claims are untimely.

Using April 29, 2016 as the filing date for Plaintiff's Complaint, *see* FN 5, Plaintiff cannot impose liability against Defendant under 42 U.S.C. § 1983 based on events that occurred prior to April 29, 2014. With respect to the denial of his first petition for DNA testing filed pursuant to Pennsylvania's postconviction DNA testing statute, the accrual date for any challenge to the postconviction procedures in denying his petition would have been June 19, 2006, the last day Plaintiff had to file a petition for allowance of appeal with the Pennsylvania Supreme Court after the Superior Court affirmed the lower court's denial of his petition on May

18, 2006.  Under this scenario, it is clear that Plaintiff's claims in connection with the denial of his first petition for access to DNA testing are untimely.

Moreover, Plaintiff's claims would also be untimely even if the Court were to use the date in which his first request for access to evidence was denied by the Allegheny County District Attorney's Office.  Plaintiff made his first request on December 10, 2004, and while the exact date it was denied is not apparent from the record, what is apparent is that his second request was denied by the District Attorney's Office on November 16, 2005.  Making the obvious assumption that this first request was denied before November 16, 2005, it is clear that Plaintiff's claims are still time-barred.

Plaintiff argues that his claims are not time-barred because the end of the state litigation on his second petition pursuant to Pennsylvania's postconviction DNA testing statute was not until October 22, 2014, the last day he had to file a petition for allowance of appeal with the Pennsylvania Superior Court after the Superior Court affirmed the lower court's denial of his petition on September 22, 2014.  Adding two years from that date, September 22, 2016, his claims would appear to be timely.  However, at least one court has rejected the argument that a plaintiff's continuous denied requests for DNA testing gives rise to a "continuing violation."  *See* Mixon v. Sedita, 757 F.Supp.2d 229, 231-32 (W.D.N.Y. 2010).  That court stated that "it is not enough for  a plaintiff simply to allege that, having once been denied relief by the defendant – allegedly in violation of his constitutional rights – he later approached the defendant again, asking for the same relief, and was again rebuffed.  If that were enough, the statute of limitations in cases such as this one would be rendered meaningless, since the plaintiff could extend the limitations period perpetually, by repeatedly asking for the same relief."  Id. at 231.  The court concluded that the plaintiff's alleged series of discrete acts, the defendants repeated refusal to

order DNA testing, is not "the type of ongoing policy that would warrant the application of the continuing-violation rule." Id. at 232. Plaintiff at bar was clearly aware of the injury that forms the basis for his claims by the end of the litigation on his first petition, if not sooner. The denial of his second petition did not constitute a separate injury that would restart the statute of limitations. Nevertheless, even if Plaintiff's claims were timely, they are still subject to dismissal for failure to state a claim.

### 3. Failure to State a Claim[8]

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-31 (1986).

In Skinner, the Supreme Court held that a convicted state prisoner may request via § 1983 the DNA testing of crime-scene evidence. 131 S. Ct. at 1298. The basis for such a request, however, does not derive from any substantive due process right secured by the Constitution's

---

[8] Defendant's first argument is that the District Attorney's Office is not an entity that can be sued under § 1983. However, previous cases analyzing DNA testing claims under § 1983 involve actions against the custodians of the evidence. *See* Skinner, 131 S. Ct. at 1295 (stating that Skinner named as the defendant "the District Attorney whose office prosecuted Skinner and has custody of the evidence Skinner would like to have DNA tested"). Presumably, the Allegheny County District Attorney's Office is the custodian of the evidence Plaintiff seeks to have DNA tested. Moreover, Pennsylvania's postconviction DNA testing statute imposes a duty on the Commonwealth to "take steps reasonably necessary to ensure that any remaining biological material . . . is preserved pending the completion of the proceedings." 42 Pa. C.S.A. § 9543.1. Thus, the District Attorney appears to be the appropriate defendant. However, whether or not Plaintiff should have named as the defendant Stephen A. Zappala, Jr., the District Attorney of Allegheny County, or the Allegheny County District Attorney's Office is a question this Court elects to bypass at this time.

Fourteenth Amendment.  *See* id. at 1299.  Instead, the request must be premised on the violation of a prisoner's procedural due process rights.[9]

In Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 129 S. Ct. 2308 (2009), the Supreme Court made clear that there is no substantive due process right to DNA evidence and procedural due process does not require that a district attorney disclose all potentially exculpatory evidence for postconviction relief to a prisoner.  Id. at 2322, 2319-20.  In Osborne, the Supreme Court held that constitutional claims like Plaintiff's "must be analyzed 'within the framework of the State's procedures for postconviction relief' and that only when those procedures are determined fundamentally unfair or constitutionally inadequate will a federal action under § 1983 lie."  Grier, 591 F.3d at 679 (quoting Osborne, 129 S. Ct. at 2320); *see also* Skinner, 131 S. Ct. at 1293 (noting that Osborne "left slim room for the prisoner to show that the governing state law denies him procedural due process").

In order to obtain relief under the Due Process Clause for denial of access to evidence for purposes of DNA testing, Plaintiff must show a violation of his procedural due process rights because there is no substantive due process right to DNA evidence.  To establish a procedural due process violation, a person must first demonstrate that he or she has been deprived of a constitutionally protected liberty or property interest.  Daniels v. Williams, 474 U.S. 327, 339 (1986); Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010).  Only upon a finding that a

---

[9] Notwithstanding the fact that Plaintiff's claim is barred for lack of subject matter jurisdiction, a plaintiff's claim seeking access to evidence for DNA testing is not barred by Heck v. Humphrey, 512 U.S. 477 (1994), wherein the United States Supreme Court held that where success in a prisoner's section 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence.  This is because "even if [the plaintiff] does prevail on his § 1983 claim, he will merely gain access to biological evidence, which in and of itself cannot invalidate or undermine his convictions."  Grier v. Klem, 591 F.3d 672, 678 (3d Cir. 2010).

protected interest is asserted does a court consider the constitutional sufficiency of the procedures associated with the interest.  If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due.  Due process is not a technical conception with a fixed content unrelated to time, place and circumstance.  Gilbert v. Homar, 520 U.S. 924, 930 (1997).  Rather, "due process is flexible and calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

In Osborne, the Supreme Court recognized that a prisoner may retain a state-created liberty interest in demonstrating his innocence with new evidence under state law.  Thus, Plaintiff has an analogous state-created liberty interest in demonstrating his innocence in the context of postconviction proceedings with appropriate evidence.  The question, however, is whether, as applied to him, the State procedures for postconviction DNA testing violated Plaintiff's procedural due process rights.

The Osborne Court stated that "the question is whether consideration of [the plaintiff's] claim within the framework of the State's procedures for postconviction relief offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation.  Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided."  Osborne, 557 U.S. at 69 (internal quotations and citations omitted).  The Osborne Court made clear that it is the plaintiff's burden to demonstrate the inadequacy of the state-law procedures available to him in state postconviction relief.  Id. at 71.

Pennsylvania's DNA testing procedures are governed by statute at 42 Pa. C.S.A. § 9543.1.  The statute sets forth several threshold requirements to obtain DNA testing: (1) the

evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency. 42 Pa. C.S.A. § 943.1(a)(2). Additionally, under section 9543.1(c)(3), the petitioner is required to present a *prima facie* case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a *prima facie* case that favorable results from the requested DNA testing would establish his innocence. *See* Commonwealth v. Williams, 35 A.3d 44, 50 (Pa. Super. 2011); Commonwealth v. Smith, 889 A.2d 582, 584 (Pa. Super. 2005), *appeal denied*, 588 Pa. 769, 905 A.2d 500 (2006).

First, Plaintiff has not shown that the Pennsylvania postconviction DNA testing procedures as discussed above are facially invalid as they contain similar requirements and limitations imposed by other DNA testing statutes, including the postconviction statute upheld in Osborne. *See* Osborne, 557 U.S. at 69-70. It may be, however, that Plaintiff is arguing that Pennsylvania's postconviction DNA testing statute violates due process because it is only available to those defendants who are still serving their sentences for the conviction of which

they are seeking DNA testing.[10]  It appears he claims that the statute prohibits him from

demonstrating his innocence for a conviction that, while he may no longer be serving a sentence,

was used to enhance his Philadelphia County sentence to life.  He claims that his life sentence for

the Philadelphia County conviction could not have been imposed without the Allegheny County

conviction, and, therefore, he still has a state-created liberty interest in demonstrating his

innocence with access to DNA testing.[11]  Plaintiff is incorrect.

      While this type of challenge to the constitutionality of Pennsylvania's postconviction

DNA testing statute is certainly cognizable in a § 1983 action, the Pennsylvania Supreme Court

has rejected this very challenge.  The issue of whether a defendant retains a liberty interest in

collateral review after he is no longer subject to the challenged sentence was directly addressed

by the Pennsylvania Supreme Court in Commonwealth v. Turner, 80 A.3d 754 (Pa. 2013).  The

---

[10] Petitioners in Pennsylvania must be currently serving a sentence of imprisonment, probation or parole for the conviction at issue to be eligible for PCRA relief, *see* 42 Pa. C.S.A. § 9543(a)(1)(i), and "[a] motion for DNA testing, while separate and distinct from claims pursuant to other sections of the PCRA, nonetheless constitutes a postconviction petition under the PCRA."  Commonwealth v. Williams, 909 A.2d 383, 384 n.1 (Pa. Super. 2006).  "As soon as his sentence is completed, the petitioner becomes ineligible for relief, regardless of whether he was serving his sentence when he filed the petition."  Commonwealth v. Williams, 977 A.2d 1174, 1176 (Pa. Super. 2009) (quoting Commonwealth v. Hart, 911 A.2d 939, 942 (Pa. Super. 2006)).

[11] As Plaintiff argues that he has a state-created liberty interest in demonstrating his innocence, he is presumably aware that there is no federal constitutional right to direct appeal and postconviction proceedings in state court.  *See* Lackawanna County Dist. Att'y v. Coss, 532 U.S. 394, 402 (2001) (noting that "each State has created mechanisms for both direct appeal and state post-conviction review, even though there is no constitutional mandate that they do so" (internal citations omitted)).  Therefore, individuals who are serving a state sentence have no liberty interest in and therefore no due process right to collateral review of that sentence unless such a liberty interest arises from the laws of that State.  As such, any liberty interest a plaintiff may have in collaterally challenging his sentence after it has expired must be state-created, and, as determined by the state legislature, individuals in Pennsylvania do not have a liberty interest in collateral review when their liberty is no longer burdened by a state sentence.  Commonwealth v. Turner, 80 A.3d 754 (Pa. 2013) (holding that this "legislative enactment [does not run] afoul of due process, as due process does not afford relief absent a protected liberty interest.") (citing Coleman v. Thompson, 501 U.S. 722, 755 (1991)).

Turner court held that "due process does not require the legislature to continue to provide collateral review when the offender is no longer serving a sentence." Id. at 765. It noted that "the legislature was free to extend a statutory right of collateral review to individuals like Petitioner who had completed their sentence and, had they done so, they would be constitutionally obligated to ensure that those rights were impacted only in accord with due process. . . . However, the legislature did not do so. Rather, the General Assembly, through the PCRA, excluded from collateral review those individuals who were no longer subject to a state sentence, thereby limiting the statutory right of collateral review to those whose liberty was constrained." Id. (citations omitted). Following Turner, Pennsylvania courts have routinely rejected facial and "as applied" challenges to the constitutionality of Section 9543(a)(1)(i). *See*, *e.g.*, Commonwealth v. Volk, 138 A.3d 659 (Pa. Super. 2016) (rejecting petitioner's facial and "as applied" challenge to the constitutionality of Section 9543(a)(1)(i), relying on Turner's holding that the statutory eligibility requirement of Section 9543(a)(1)(i) is consistent with the due process prerequisite of protected liberty interest; absent valid liberty interest, challenge to both procedural and substantive due process must fail); Commonwealth v. Safarowicz, 2015 WL 6437600 (Pa. Super. Jan. 28, 2015). Because Petitioner is no longer burdened by his Allegheny County sentence, he no longer has a due process right to collateral review of that sentence, including seeking access to evidence for DNA testing.

The Court will address one last argument Plaintiff appears to make. He argues that Pennsylvania's postconviction DNA testing statute is fundamentally unfair because it bars him from access to evidence "on the sole ground that testimony (now, known to be false) from Williams who alleged that Plaintiff admitted to him that he committed the crime." (ECF No. 51, p.6.) However, Plaintiff is incorrect in his assertion that his motion for DNA testing was denied

solely based on Benjamin Williams' testimony that Plaintiff admitted he killed the victim. The judge set forth three reasons why he believed there was no "reasonable probability" that DNA testing would produce exculpatory evidence and only one of those reasons included Williams' testimony. Moreover, in support of his conclusion that the evidence against Plaintiff was overwhelming, the judge cited to Williams' testimony about helping Plaintiff bury the body and not Williams' testimony about Plaintiff confessing to the crime. *See* Commonwealth v. Palmer, No. CC9309376 (Opinion of O'Toole, J. Oct. 11, 2005). Therefore, Plaintiff's argument is belied by the record.

### B. Access to Court

Plaintiff's second claim is based on the allegation that the prosecution withheld evidence of a "deal" for leniency between the United States Attorney and witness Benjamin Williams that would have undermined Williams' credibility at trial. Plaintiff maintains that the Commonwealth concealed evidence of the agreement until after he finished serving his sentence and this wrongful conduct prevented him from challenging his conviction based on the prosecution's withholding evidence of the deal. (ECF No. 33, ¶ 100.)

The Constitution guarantees prisoners a "right of access to the courts." Lewis v. Casey, 518 U.S. 343, 350 (1996) (emphasis omitted). Where, as here, the prisoner asserts that the defendants' actions have inhibited his opportunity to present a past legal claim, he must show (1) he suffered an actual injury – that is, that he lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) he has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. Christopher v. Harbury, 536 U.S. 403, 415 (2005); *see also* Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). "To that end, prisoners must satisfy certain pleading requirements. The complaint must describe

the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Monroe, 536 F.3d at 205-06 (quoting Christopher, 536 U.S. at 416-17).

Furthermore, a plaintiff must demonstrate intent on the part of the defendants. The Third Circuit has explained a denial of access claim is available where state officials

> "*wrongfully* and *intentionally* conceal information crucial to a person's ability to obtain redress through the courts, and so *for the purpose of frustrating that right*, and that concealment, and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled."

Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety – Div. of State Police, 411 F.3d 427, 445 (3d Cir. 2005), *overruled on other grounds by* Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010), (quoting Swekel v. City of River Rouge, 119 F.3d 1259, 1262-63 (6th Cir. 997) (emphasis contained within).

So then, in order to support his access to courts claim, Plaintiff is required to demonstrate that he has lost the opportunity to pursue a nonfrivolous or arguable underlying legal claim, that there is no other remedy available to him, and that Defendant had the requisite intent to deny his constitutional right of access to courts.

In his Amended Complaint, Plaintiff describes his underlying nonfrivolous claim(s) that he was unable to pursue as follows: he was denied his right to a fair trial because the prosecution knowingly elicited false testimony from Benjamin Williams to bolster his credibility, failed to correct testimony it knew to be false, and failed to disclose that Benjamin Williams was testifying against Plaintiff pursuant to an agreement all in violation of Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and Napue v. Illinois, 360 U.S. 264 (1959).

For his lost opportunity to challenge his conviction based on the prosecution's misconduct in failing to disclose evidence of the alleged deal for leniency made between federal authorities and Benjamin Williams, Plaintiff's claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994), so long as success on this claim would necessarily demonstrate the invalidity of his conviction. In Heck, the Supreme Court held that where success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction or sentence. Considering Heck and summarizing the interplay between habeas and § 1983 claims, the Supreme Court explained that,

> a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original). Thus, the threshold question now becomes whether success on Plaintiff's access to courts claim would "necessarily demonstrate" the invalidity of his conviction.[12] Clearly, it would because to be successful on his access to courts claim he would have to demonstrate that his Brady, Giglio, and Napue violation claims are "nonfrivolous" or "arguable" in nature and to do so would call into question the validity of his conviction. *See* Amaker v. Weiner, 179 F.3d 48, 51 (2d Cir. 1999) (holding that Brady claims implicate the validity of the resulting conviction and are thus barred by Heck)

In addressing alleged Brady violations in the context of Heck, the Supreme Court has stated:

---

[12] Furthermore, the Third Circuit, unlike other Circuits, has held that Heck's favorable termination rule applies even when the plaintiff is no longer in custody and cannot pursue habeas relief. *See* Gilles v. Davis, 427 F.3d 197, 209-11 (3d Cir. 2005).

Unlike DNA testing, which may yield exculpatory, incriminating, or inconclusive results, a Brady claim, when successful postconviction, necessarily yields evidence undermining a conviction: Brady evidence is, by definition, always favorable to the defendant and material to his guilt or punishment. *See* Strickler, 527 U.S., at 296, 119 S.Ct. 1936. And parties asserting Brady violations postconviction generally do seek a judgment qualifying them for "immediate or speedier release" from imprisonment. *See* Dotson, 544 U.S., at 82, 125 S.Ct. 1242. Accordingly, Brady claims have ranked within the traditional core of habeas corpus and outside the province of § 1983. *See* Heck, 512 U.S., at 479, 490, 114 S.Ct. 2364 (claim that prosecutors and an investigator had "'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence' " cannot be maintained under § 1983); Amaker v. Weiner, 179 F.3d 48, 51 (C.A.2 1999) ("claim [that] sounds under Brady v. Maryland ... does indeed call into question the validity of [the] conviction"); Beck v. Muskogee Police Dept., 195 F.3d 553, 560 (C.A.10 1999) (same).

Skinner v. Switzer, 562 U.S. 521, 536-37 (2011).

Plaintiff's allegation that the Commonwealth suborned perjury from Benjamin Williams by having him testify that he had received no promises in exchange for his testimony, when, in fact, in 1993, the United States Attorney had promised Williams leniency in sentencing for a federal crime in exchange for Williams' testimony against Plaintiff would necessarily imply the invalidity of Plaintiff's conviction. Indeed, the remedy for such violations is vacatur of the judgment of conviction and a new trial. Heck therefore applies with respect to his access to courts claim. *See*, *e.g.*, Burd v.Sessler, 702 F.3d 429, 434-35 (7th Cir. 2012) (holding Heck barred the plaintiff's § 1983 access to courts claim seeking money damages for prison officials' interference with his ability to challenge his state court conviction); Hoard v. Reddy, 175 F.3d 531, 534 (7th Cir.1999) ("where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and so he cannot get damages until the conviction is invalidated."); Nance v. Vieregge, 147 F.3d 589 (7th Cir. 1998) ("[t]he holding of Lewis that a claim based on deprivation of access to the courts requires proof of concrete injury, combined with the holding of Heck, means that a

prisoner . . . must have the judgement annulled before damages are available"). Accordingly, this claim will be dismissed without prejudice. *See* Curry v. Yachera, 835 F.3d 373, 379 (3d Cir. 2016) (dismissal of case based on Heck is without prejudice); Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999).

On a final note, it is questionable whether Heck's favorable termination rule bars a plaintiff's claim for injunctive or declaratory relief. *See* Edwards v. Balisok, 520 U.S. 641, 648-49 (1997) ("[R]espondent's claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983 . . . ." but respondent's "request for prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits, and so may properly be brought under § 1983."); Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1141 (9th Cir. 2005) (finding the plaintiff's claims for damages and declaratory relief barred by Heck, but his claim for injunctive relief was not); Hoard v. Reddy, 175 F.3d 531, 533 (7th Cir. 1999) (noting that an inmate could use 42 U.S.C. § 1983 to seek an injunction in order to clear his block access to the court); Fritz v. Colorado, 223 F.Supp.2d 1197, 1202 (D. Co. 2002) (concluding that Heck did not apply directly to bar the plaintiff's claims for declaratory and injunctive relief); Bell v. City of Boise, 993 F.Supp.2d 1237, 1244-45 (D. Id. 2014) (noting that "[i]n most instances, the holding of Heck will bar § 1983 claims for injunctive and declaratory relief . . . . However, Heck does not necessarily preclude all claims under the Declaratory Judgment Act.") (internal citations omitted). *But see* Miller v. Harris County, Texas, 396 F. App'x 77, 78 (5th Cir. 2010) (plaintiff's claims for declaratory and injunctive relief were properly dismissed under Heck because they "call into question the validity of the deferred adjudication order and order adjudicating his guilt"); Clarke v. Stalder, 154 F.3d 186, 190-91

(5th Cir.1998) (en banc) (plaintiff's declaratory relief request is barred because it is "so intertwined with his requests for restoration of lost good-time credits and damages that resolution of the issues . . . would, in effect, if favorable, automatically entitle [plaintiff] to reinstatement of his lost-good time credits."); Sheldon v. Hundley, 83 F.3d 231, 234 (8th Cir. 1996) (same); Coleman v. United States District Court District of New Mexico, 2016 WL 8924939, at *1 (D.N.M. Mar. 30, 2016) ("The Heck doctrine also applies without respect to whether the relief sought is in the form of damages or equitable declaratory or injunctive relief."); Branthoover v. Burbach, 2010 WL 3341197, at *2 (D. Col. Aug. 23, 2010) (finding that the plaintiff's request for declaratory relief was also barred by Heck because a declaration that the defendants violated the plaintiff's constitutional rights would necessarily imply the invalidity of her state court convictions.). As previously stated in this Opinion, the Supreme Court has said that "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target or the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson, 544 U.S. at 81-82 (emphasis in original).

Presumably, Plaintiff is aware that Heck bars his claims for damages because he states many times throughout his briefs that he is seeking declaratory and injunctive relief. While he does not specify the nature of the injunctive relief he requests, he does state that he is seeking a declaration that Defendant hindered his access to post-conviction remedies in his Allegheny County case so that he may in turn challenge his Philadelphia County sentence. However, such a declaration would be declaring that due process violations occurred in his Allegheny County case, which would impugn the validity of his Allegheny County conviction. This declaratory

relief necessarily implies the invalidity of his Allegheny County conviction and is therefore barred by <u>Heck</u>.[13]

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant the Defendant's Motion as follows. The Court will dismiss for lack of subject matter jurisdiction Plaintiff's claims in connection with his denial of access to evidence for DNA testing. In the alternative, the Court will dismiss those claims as time-barred and for failure to state a claim. With respect to his access to courts claim, the Court will dismiss those claims without prejudice pursuant to <u>Heck</u>. An appropriate Order follows.

Dated:  August 14, 2017.

Lisa Pupo Lenihan
United States Magistrate Judge

---

[13] Defendant has set forth more reasons for dismissal; however, there is no need for the Court to rule on the balance of Defendant's arguments.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JERMAINE PALMER,       )
                         )     Civil Action No. 16 – 567
           Plaintiff,    )
                         )
        v.             )     Magistrate Judge Lisa Pupo Lenihan
                         )
DISTRICT ATTORNEY'S OFFICE   )
OF ALLEGHENY COUNTY,    )
                         )
          Defendant.   )

## ORDER

     **AND NOW**, this 14th day of August, 2017, for the reasons stated in this Court's

Memorandum Opinion filed contemporaneously herewith,

     **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Amended

Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (ECF

No. 43) is **GRANTED** for the reasons, and only those reasons, set forth in this Court's

Opinion.

     **IT IS HEREBY ORDERED** that Plaintiff's Amended Complaint (ECF No. 33)

is **DISMISSED** and the Clerk is directed to mark this case **CLOSED**.

     **AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules

of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by

Rule 3 of the Federal Rules of Appellate Procedure.

                                    _____

                                    Lisa Pupo Lenihan
                                    United States Magistrate Judge

cc:  Jermain Palmer

CS-0716
SCI Somerset
1600 Walters Mill Road.
Somerset, PA 15510
(*Via First Class Mail*)

Counsel for Defendants
(*Via CM/ECF Electronic Mail*)